Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MANUEL A. NOVAS DUEÑO<br><br>Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES Y CONSEJO DE TITULARES DEL CONDOMINIO PLACID PARK y su presidente WILO BENET<br><br>Recurrido | KLRA202500315 | REVISIÓN JUDICIAL Procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2024-0019848<br><br>Sobre: Ley de Condominios |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2025.

El 29 de mayo de 2025, el Sr. Manuel A. Novas Dueño (en adelante señor Novas o recurrente) presentó *Recurso de Revisión Judicial* en el que nos solicitó la revocación de la *Resolución Sumaria* dictada por el Departamento de Asuntos del Consumidor (en adelante, DACo) el 24 de marzo de 2025. Por virtud del aludido dictamen, el DACo desestimó por falta de jurisdicción la *Querella* que el recurrente presentó contra la Junta de Directores y el Consejo de Titulares del Condominio Placid Park y su presidente, Wilo Benet (en adelante, los recurridos).

Examinado el recurso, la postura de los recurridos, así como los documentos que acompañaron ambos escritos, al amparo de las disposiciones legales aplicables que más adelante exponemos, resolvemos **confirmar** la determinación recurrida.

**-I-**

El 11 de octubre de 2024, el peticionario sometió ante el DACo una *Querella*. Allí, solicitó que se declarara nulo el acuerdo tomado por el Consejo de Titulares sobre la derrama aprobada en la Asamblea Extraordinaria citada para el 11 de diciembre de 2023. A su vez, cuestiona la aplicación retroactiva de un aumento en la cuota mensual de mantenimiento aprobada en asamblea celebrada el 11 de julio de 2024. En cuanto a esto, señala que ni de la convocatoria ni el acta de la reunión ordinaria surge que el aumento aprobado fuera retroactivo a enero del 2024. El señor Novas solicitó que se invalidara la deuda adquirida y se declarara nulo el aumento retroactivo al mantenimiento.

El 19 de diciembre de 2024, los recurridos presentaron una *Solicitud de Desestimación por Falta de Jurisdicción.* En su escrito, señalaron que la *Querella* fue sometida en exceso de los treinta días que la Ley de Condominio le concedía al peticionario para impugnar los acuerdos alcanzados en la asamblea del 11 de diciembre de 2023, a la que había asistido. También, afirmaron que los acuerdos fueron aprobados por unanimidad.

En cuanto a los convenios alcanzados en asamblea del 11 de julio de 2024, aunque reconocieron que la impugnación fue oportuna, reclamaron que el peticionario no podía ir en contra de sus propios actos e intentar impugnar acuerdos que él mismo aprobó. Así pues, y en base a estos argumentos, solicitaron la desestimación de la *Querella* y la imposición de honorarios de abogado. Los recurridos acompañaron su escrito con los siguientes documentos:

- *Minuta de Asamblea Ordinaria del 10 de febrero de 2017.*
- *Acta de Asamblea Extraordinaria del 19 de diciembre de 2018.*
- *Acta Enmendada de Asamblea Extraordinaria del 20 de julio de 2020.*
- *Acta de Asamblea Extraordinaria por Videoconferencia del 14 de enero de 2021.*

- *Acta de Asamblea Ordinaria del 26 de mayo de 2022.*

- *Acta de Asamblea Extraordinaria del 11 de diciembre de 2023.*

- *Acta de Asamblea Ordinaria del 11 de julio de 2024.*

El recurrente se opuso a la moción dispositiva. Afirmativamente, expuso que su impugnación de la asamblea del 11 de diciembre de 2023, fue oportuna, pues la situación de hechos del caso le era aplicable el plazo de 2 años que el Artículo 65 dispone para las situaciones en las que las acciones impugnadas constituyan violaciones a la Ley de Condominios, la escritura matriz o el correspondiente reglamento. Asimismo, aunque aceptó que en la asamblea celebrada el 11 de julio de 2024 votó a favor del aumento de la cuota de mantenimiento, manifestó que su voto se basó en la propuesta original sometida que en nada disponía sobre la aplicación retroactiva del aumento. Por ello, asevera que a la alteración fundamental que conllevó la retroactividad del aumento no podía aplicársele la doctrina de actos propios y debía continuarse su reclamo.

Atendidos ambos escritos, el DACo emitió la determinación recurrida. Allí, concluyó que la derrama aprobada durante la asamblea del 11 de diciembre de 2023, no requería la unanimidad del Consejo de Titulares, por lo que no le era de aplicación el plazo de 2 años reconocido por el Artículo 65 de la Ley de Condominios, *infra*. De igual manera, estableció que, según los documentos sometidos, el presupuesto que se aprobó en la asamblea del 11 de julio de 2024 no fue opuesto por el recurrente. Así, dictaminó que este estaba impedido de ir contra sus propios actos e impugnar algo que había aceptado. En desacuerdo, el señor Novas solicitó reconsideración ante el DACo. La agencia no actuó en cuanto a esta petición, por lo que oportunamente acudió ante nos y señaló la comisión de los siguientes errores:

PRIMER SEÑALAMIENTO DE ERROR: Erró DACO al determinar que no existía controversia esencial sobre hechos materiales, resolviendo sumariamente sin vista administrativa.

SEGUNDO SEÑALAMIENTO DE ERROR: Erró DACO al desestimar sumariamente la Querella sin permitir al querellante mostrar causa ni realizar descubrimiento probatorio.

TERCER SEÑALAMIENTO DE ERROR: Erró DACO al aplicar incorrectamente los términos prescriptivos para impugnación bajo la Ley de Condominios.

CUARTO SEÑALAMIENTO DE ERROR: Erró DACO al validar acuerdos adoptados sin unanimidad cuando así lo exige la ley.

QUINTO SEÑALAMIENTO DE ERROR: Erró DACO al no salvaguardar el derecho fundamental al debido proceso administrativo.

Atendido el recurso, le ordenamos a la parte recurrida a comparecer dentro del plazo reglamentario para ello. El 30 de junio de 2025, en cumplimiento con ello, sometió *Alegato en Oposición a Petición de Revisión*.

-II-

A.

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[1]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si

---

[1] 3 LPRA Sec. 9675.

estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en Loper Bright Enterprises v. Raimondo, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR _____. Específicamente, nuestro más alto foro allí consigno que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, **los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua."** (énfasis en el original)

*B.*

La Ley de Condominios de Puerto Rico, Ley 129-2020, se aprobó, entre otros propósitos, con el fin de viabilizar la propiedad individual sobre un apartamento que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal. 31 LPRA Sec. 1921a. Así, el referido estatuto reconoce al Consejo de Titulares como la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal, el cual estará integrado por todos los titulares.[2] Este Consejo, puede apreciarse, no es más que el conjunto de titulares del condominio y su finalidad consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que proteger los intereses de todos sus

---

[2] 31 LPRA, Sec. 1922t.

miembros.[3] Dicho cuerpo, delega la administración del condominio a la Junta de Directores. *Id.*

El artículo 49 de la Ley de Condominios, 31 LPRA Sec. 1922u, establece los poderes y deberes del Consejo de Titulares.[4] Entre estos, se encuentra la aprobación de la ejecución de obras extraordinarias y mejoras, así como la recaudación de los fondos para su realización. La Ley de Condominios, define obras extraordinarias como "[t]oda obra de mantenimiento no prevista en el presupuesto anual, que requiera la imposición de una derrama para su ejecución." Por su parte, dicho estatuto estable que toda obra cuya ejecución no pueda posponerse por razones apremiantes de seguridad o porque sea necesaria para la restitución de los servicios esenciales, tales como el suministro de agua, de electricidad o la puesta en funcionamiento de los ascensores se considerará una obra urgente.[5]

Según la Ley de Condominios, tanto las obras extraordinarias como las urgentes pueden ser aprobadas por la mayoría de los titulares presentes en una asamblea extraordinaria convocada para atender el asunto específico.[6] Por su parte, las obras de mejoras sólo podrán realizarse mediante la aprobación de dos terceras partes (2/3) de los titulares que a su vez reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes. Ahora bien, se requerirá el consentimiento unánime del Consejo de Titulares cuando dichas obras de mejoras requieran derrama. *Id.*

De otra parte, y en con relación específica a la controversia, es importante destacar que la Ley de Condominios reconoce el derecho de cualquier titular a impugnar las acciones u omisiones de la Junta de Directores y los acuerdos del Consejo de Titulares. Así podrá impugnarse

---

[3] <u>Vázquez v. Consejo de Titulares</u>, 2025 TSPR 56, 215 DPR ____.
[4] 31 LPRA Sec. 1922u.
[5] 31 LPRASEc. 1921b (r) y (t).
[6] Véase Artículo 49 de la Ley de Condominios, *supra.*

cuando tales acciones, omisiones o acuerdos: sean contrarios a las disposiciones del propio estatuto, la escritura matriz y el reglamento del condominio; estos resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; o cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

Para todo tipo de impugnación se tendrán 30 días contados desde la fecha en que se tomó el acuerdo, si se hizo en presencia del titular que impugna. En aquellos casos en los que el titular no estaba presente cuando se alcanzó el acuerdo, los treinta (30) días comenzaran a correr desde que recibió la notificación del convenio.[7] No obstante, cuando la impugnación de acuerdos, acciones u omisiones del cuerpo directivo constituya violaciones a las disposiciones de la Ley de Condominios, la escritura matriz o el reglamento, el plazo disponible es dos (2) años. *Id.*[8]  El titular que quiera impugnar una acción, omisión o acuerdo, tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares, a menos que la impugnación sea para cuestionar la deuda que alegadamente tiene.

**-III-**

El señor Novas señaló la comisión de cinco (5) errores. Mediante la discusión de los primeros dos, afirma que la resolución sumaria de su *Querella* fue una errada pues el expediente administrativo demostraba la existencia de controversias materiales relevantes al caso. También le atribuye falla al DACo al resolver de forma sumaria sin permitir que primero se realizara descubrimiento de prueba. Según el señor Novas, tal

---

[7] Artículo 65 de la Ley de Condominios, 31 LPRA Sec. 1923j.

[8] Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción primaria y exclusiva. En caso que los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador. *Id.*

acción infligió su derecho a ser oído y es contraria a los elementos del debido proceso administrativo.

Por su parte, al exponer las razones por las que entiende que su tercer error fue cometido, asevera que al erradamente aplicar el plazo de 30 días del Artículo 65 de la Ley de Condominios el DACo ignoró que el propio lenguaje establece que se tendrá un plazo de 2 años para impugnar los acuerdos que son contrarios a la Ley de Condominios. Así, señala que durante la asamblea celebrada el 11 de diciembre de 2023, se aprobó una derrama sobre obras que constituyen mejoras sin el voto unánime que la ley exige. Por consiguiente, reclamó tener disponible el término mayor de 2 años concedido por el referido estatuto para impugnar este acuerdo.

A su vez, al fundamentar su cuarto señalamiento de error, el recurrente le imputa al DACo validar acuerdos ilegales para la realización de obras de mejora sin que se cumpliera el requisito de unanimidad en la votación. Específicamente, en su discusión expone:

> En este caso, los acuerdos impugnados aprobaron obras que, según los hechos y documentos presentados, constituyen mejoras sustanciales al condominio y requirieron la imposición de derramas a los titulares. Sin embargo, no consta en el expediente que tales acuerdos hayan sido aprobados por unanimidad. Por el contrario, existe evidencia clara y no controvertida de la ausencia de unanimidad en las votaciones correspondientes.
>
> […]
>
> La nulidad absoluta de los acuerdos adoptados sin unanimidad implica que cualquier derrama cobrada en virtud de tales acuerdos debe ser restituida a los titulares afectados. Además, se abre la puerta a reclamaciones adicionales por daños y perjuicios si se demuestra que la actuación irregular causó menoscabo económico o patrimonial a los titulares.

Por último, en cuanto al quinto error que señaló, el recurrente argumenta que, si bien votó a favor del aumento en la cuota de mantenimiento en la Asamblea del 11 de julio de 2024, su aprobación al alza se basó en la propuesta original que no incluía una aplicación retroactiva

del aumento. Afirma que la determinación de aplicar retroactivamente el aumento aprobado constituye una violación al principio de lealtad recíproca. De igual manera, imputa que las acciones de la Junta de Directores constituyen violación al debido proceso de ley y una infracción a su deber fiduciario. Por todos estos y demás argumentos, el señor Novas afirma que la actuación del DACo menoscabó derechos fundamentales y principios rectores del régimen de propiedad horizontal que amerita nuestra intervención y revocación.

La parte recurrida, afirma que por disposición reglamentaria el DACo estaba autorizado a resolver sumariamente en aquellos casos como el de epígrafe en el que no existe controversia. Siendo así, expone que los dos primeros errores no fueron cometidos. En cuanto al resto de los distintos planteamientos levantados por el recurrente, afirma que un simple examen del expediente administrativo permite apreciar la falta de jurisdicción del DACo sobre los acuerdos alcanzados durante la asamblea del 11 de diciembre de 2023.

De igual manera, expone que es fácil apreciar que la impugnación ocurrida sucedió después de los 30 días que la Ley de Condominios dispone para ello. Asimismo, indica que "[i]ndependientemente de la aplicación del término prescriptivo, surge del Acta de la Asamblea Extraordinaria celebrada el 11 de diciembre de 2023, en la cual el Recurrente estuvo presente, que la derrama propuesta fue aprobada por unanimidad de los presentes sin registrarse oposición alguna" por lo que el señor Novas no podía ir contra sus propios actos.[9] Igual defensa levanta frente a la impugnación del recurrente sobre los acuerdos alcanzados en la asamblea del 11 de julio de 2024.

---

[9] Desconocemos en qué se basan los recurridos para consignar que la derrama aprobada el 11 de diciembre de 2024, fue aprobada por unanimidad. Del Acta levantada surge claramente que los acuerdos allí aprobados fueron aceptados con ocho votos a favor y dos en contra, siendo uno de ellos el voto del recurrente. Véase página 059 del Apéndice.

Evaluado el legajo apelativo, resolvemos que los errores señalados por el recurrente no se cometieron.

En primer lugar, tanto del *Reglamento de Procedimientos Adjudicativos* del 14 de junio de 2011 del DACo (en adelante, Reglamento número 8034), como de la LPAU surge que el DACo no está obligado a celebrar una vista administrativa cuando del propio expediente surja que no existe controversia de hechos materiales.[10] Siendo ello así, el DACo actuó dentro de la autoridad que le fue conferida por ley al resolver sumariamente.

Bajo la aludida potestad, y tras evaluar los documentos sometidos por las partes en el caso, el DACo estimó que era un hecho incontrovertido que la impugnación sometida por el recurrente sobre los acuerdos de la asamblea del 11 de diciembre de 2024 ocurrió luego de expirado el plazo disponible para ello. Específicamente, estimó que la derrama que allí se impuso no respondía a asuntos de obras de mejoras que exigieran unanimidad en su aprobación. En virtud de ello, resolvió que la impugnación del recurrente debió presentarse dentro del plazo de 30 días dispuesto por el Artículo 65 de la Ley de Condominios por lo que carecía de jurisdicción sobre el asunto.

El recurrente alega que dicha estimación es errada y que al caso de epígrafe le es aplicable el término de 2 años contenido en el antes mencionado artículo. Sin embargo, tras revisar el Acta de la Asamblea Extraordinaria celebrada el 11 de diciembre de 2024 discrepamos de tal postura. Una lectura de este documento nos permite apreciar que la derrama propuesta, según allí se informó, tenía el propósito de **cubrir un déficit presupuestario** creado principalmente por los gastos legales incurridos y el costo final del proyecto de las escaleras de emergencia.[11]

---

[10] Véase Regla 11.1 del Reglamento 8034 y Sección 3.7 de la LPAU.

[11] No escapa a nuestra atención que los trabajos relacionados a la modificación de la salida de emergencia del generador eléctrico se aprobaron durante Asamblea Ordinaria celebrada en el año 2022 y que el acta de esta establece que tal modificación debía realizarse para cumplir con un requisito del Servicio de Bomberos de Puerto Rico a raíz de una querella presentada por el propio recurrente. Véase, página 052 del Apéndice.

Vemos pues, que la derrama aprobada no fue propuesta con el fin de realizar una obra de mejora como alega el recurrente.

Si bien se hace alusión a ciertos trabajos en la escalera de emergencia, la realidad es que conforme el propio expediente administrativo, la obra de instalación de un generador eléctrico y modificación a la salida de emergencia son acuerdos previamente alcanzados por el Consejo de Titulares cuyo plazo para impugnación vencieron sin acción impugnatoria alguna del recurrente. Por tanto, cualquier reclamo en cuanto al requisito de unanimidad que estos debían cumplir sometido a estas alturas es tardío.

En consideración de esto, nos parece que la interpretación que el DACo hizo de la Ley de Condominios y su aplicación al caso de epígrafe fue una adecuada y correcta. La derrama solicitada para cubrir el déficit presupuestario no requería unanimidad en los votos para ser aprobada. Basta solo con repasar la Ley de Condominios para así poder constatarlo.[12] Habiéndose aprobado la derrama por votación mayoritaria sin que exista un requisito de unanimidad dentro de la Ley de Condominios en cuanto a los asuntos que la misma concierne, nos resulta forzoso concluir que la votación no infringió disposición alguna de la Ley de Condominios.[13] Por consiguiente, el DACo actuó correctamente al concluir que el plazo

---

[12] De hecho, en cuanto a los déficits presupuestarios la Ley de Condominios solamente dispone dos cosas. Primero, y según su artículo 32, de haber algún déficit en el presupuesto, será responsabilidad del administrador interino el cubrir la deficiencia, salvo la excepción allí consignada. Segundo, en su artículo 53, establece que los estados financieros deberán incluir, entre otras cosas, las cuentas a cobrar por concepto de gastos comunes y por otros conceptos, otros activos, las obligaciones incurridas y no pagadas al cierre del periodo y el balance o déficit acumulado a la fecha del cierre del periodo informado en cada fondo existente. O sea, la Ley de Condominios no contiene disposición alguna que exija unanimidad para la aprobación de una derrama con fines de cubrir un déficit presupuestario.

[13] Hacemos la salvedad que el reclamo del recurrente se limitó al mencionado estatuto. En sus argumentos no reclamó violación alguna a las disposiciones de la escritura matriz o del reglamento del Condominio, por lo que nuestro análisis se limita a dicha disposición legal solamente. Hemos repasado estos documentos, pues sí sometió copia de ellos como parte del Apéndice y advertimos que ninguno de ellos establece requisitos de votación, a excepción de la *Escritura Estableciendo Régimen de Propiedad Horizontal para Edificio de Apartamientos* que en su párrafo decimotercero requiere un acuerdo unánime de todos los condómines para que, en caso de que la propiedad objeto del régimen fuera total o sustancialmente destruida, esta pueda ser reparada, reconstruida o reposicionada contrario a las disposiciones de la Ley 104 del 25 de junio de 1958. Véase página 114 del Apéndice.

disponible en favor del recurrente para impugnar su aprobación eran los 30 días que el Artículo 65 de dicho estatuto establece, no el de 2 años allí también mencionado.

De otra parte, y en cuanto a la impugnación del recurrente de los acuerdos establecidos durante la Asamblea Ordinaria del 11 de julio de 2024, el recurrente admite haber votado en favor del aumento de cuota de mantenimiento. Sin embargo, alega que tal votación no debe ser un impedimento para poder impugnar los convenios, pues su voto descansó en la premisa de que dicho aumento sería prospectivo, más la Junta lo ha aplicado retroactivamente. Hemos estudiado con detenimiento el legajo apelativo y no encontramos documento alguno que evidencia que, tal cual alega el recurrente, se haya establecido un aumento retroactivo de la cuota de mantenimiento. Por tanto, no nos ha colocado en posición alguna de entender que existe una justificación válida por la cual su aprobación al aumento no deba utilizarse en su contra.

**-IV-**

Por todo lo antes expuestos, confirmamos la resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones